IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT STOUT,
          Plaintiff,

v.                                                  Civil Action No. 3:21cv575

SERGEANT JEFFRIES, et al.,
          Defendants.

**OPINION**

On a March afternoon in 2020, Robert Stout ("Stout") and his brother walked along the road outside of the Spotsylvania County Courthouse and Public Safety Building (the "courthouse"), recording with cameras. Several Spotsylvania County Sheriff's deputies, including Sergeant Jeffries, First Sergeant Harris, and Deputy Riley (collectively, the "defendants"), noticed the Stouts. The deputies confronted the Stouts to tell them to not walk in the road, which led to an argument before the deputies ultimately arrested the Stouts. Stout now sues the defendants, alleging illegal detention, unlawful arrest, and malicious prosecution in violation of the Fourth Amendment and Virginia law, in addition to a state assault-and-battery claim.

The parties have filed cross-motions for summary judgment. (ECF Nos. 46, 48.) The video evidence establishes that the deputies had probable cause to detain and arrest Stout for walking in a roadway, in violation of Virginia Code Section 46.2-928. Because the deputies had probable cause, none of Stout's claims can proceed. The Court, therefore, will grant the defendants' motion for summary judgment, (ECF No. 46), and deny Stout's motion for summary judgment, (ECF No. 48).

## I. BACKGROUND[1]

On March 19, 2020, the Stouts were walking along Dean Ridings Lane,[2] a road that runs along the front of the courthouse and feeds into the courthouse's parking lots. (ECF No. 39 ¶¶ 7.1, 7.2; ECF No. 47, ¶ 5; ECF No. 47-3.) Large grassy areas flank either side of Dean Ridings Lane, and a small parking lot lies between the road and the front of the courthouse. (ECF No. 39-1 ¶¶ 7.1, 7.2.) The Stouts carried handheld video cameras, recording videos as they walked. (ECF No. 47-3.)

Sergeant Harris and another deputy, Deputy Barto,[3] parked on Dean Ridings Lane in front of the Stouts, got out of their police cars, and walked up to them. (ECF No. 47-4, at 00:39.) The Stouts stood on the grass beside the road near the mouth of the small parking lot in front of the courthouse. (ECF No. 47-4, at 00:39.)

Harris and Stout's brother argued over whether the Stouts could walk on the road, and the brother told Harris, "Don't violate my rights, and I won't hurt you." (ECF No. 47-3, at 1:05.) Harris took this as a threat, so he asked Stout's brother for his identification. (ECF No. 47-4, 1:00–2:00.) Deputy Riley, Deputy Haney, and other deputies then arrived. (ECF No. 45-7.)

---

[1] This section recounts the facts based on the amended complaint, the parties' pleadings for summary judgment, and the video evidence of the incident submitted by the parties.

[2] The parties dispute whether the Stouts walked on the road before the deputies arrived. (*Compare* ECF No. 48, at 7, *with* EFC No. 47, at 4.) None of the video evidence shows the Stouts before the deputies arrived.

[3] Deputy Barto recorded the stop and subsequent arrest on her body camera, (ECF No. 47-4), and the Stouts recorded with their cameras before the deputies arrested them, (ECF No. 47-3). Deputy Haney and Deputy Stocking, who arrived just before Stout's brother's arrest, also recorded with their body cameras. (ECF No. 47-5, 47-6.) Deputy Riley, who arrived around the same time, had his dash-cam filming. (ECF No. 45-7.)

As Stout's brother argued with Harris, Stout told Harris, "Hey, just so you know, too, if you try to illegally detain him, I can assist him in defending himself." (ECF No. 47-3, at 04:14; ECF No. 47-4, at 04:13; ECF No. 47-5, at 03:05; ECF No. 47-7, at 2:45.) Throughout the argument, Stout continued recording as he paced between the middle of the road, the curb, and the grass next to the road. (*See, e.g.*, ECF No. 47-3, at 05:25; ECF No. 47-4, at 00:48, 01:29, 3:13; ECF No. 47-5, at 00:30, 02:35; ECF No. 47-6, at 00:31; ECF No. 47-7, at 02:45.)

Stout's brother refused to give Harris his identification, and eventually, Harris and Riley arrested him. (ECF No. 47 ¶ 10.) At that point, Stout stood a few feet away on the grass. (*Id.*) After handcuffing Stout's brother, Riley approached Stout, saying something about Stout being in the road. (ECF No. 47-3, at 05:59; ECF No. 47-4, 05:45; ECF No. 47-5, at 04:36; No. 47-6, at 01:23.)[4] As Riley reached out to Stout, Stout stepped a few yards backward, into the parking-lot entrance. (ECF No. 47-4, at 05:47; ECF No. 47-5, 04:40.) Riley and other deputies followed Stout with tasers drawn, and Stout stopped and let the deputies handcuff him. (ECF No. 47-5, at 04:46; ECF No. 47-6, at 01:25.) When the deputies repeatedly asked Stout to identify himself, he refused. (ECF No 47 ¶¶ 14–15.)

Sergeant Jeffries arrived about two minutes after the deputies handcuffed Stout, and he and Deputy Haney searched Stout before placing him in a police van. (ECF No. ECF No. 47-5, 06:24, ECF No. 47-4, 9:34–10:02, 11:03–11:25.) Sergeant Jeffries and Deputy Barto charged Stout with obstruction of justice and assault and battery. (ECF No. 47-8). The magistrate found probable cause for the offenses and issued warrants for Stout's arrest, (*id.*), but the prosecutor later nolle

---

[4] The government asserts that Riley saw that Stout was about to step backward into the road, so he "reached out his hand and told him 'watch out, you're stepping in the road.'" (ECF No. 47, at 5 (citing Ex. 6 at 1:10).) The video evidence, however, appears to show Riley trying to grab Stout so he could detain him. (ECF No. 47-4, at 05:47; ECF No. 47-5, 04:40; ECF No. 47-6, at 01:20.)

prossed the obstruction charge, and a jury acquitted Stout of the assault-and-battery charge, (ECF No. 47 ¶¶ 24–25).

While a part of Dean Ridings Lane leading to the courthouse was closed the day of the confrontation, the portion directly in front of the courthouse where the deputies confronted the Stouts remained open. Stout's amended complaint included pictures of road-closure signage that he says was on the road that day. (ECF 39-1, at 3–5.) His amended complaint included a map marking a detour around the closed portion Dean Ridings Lane and through an adjacent parking lot, linking back up with Dean Ridings Lane in front of the courthouse. (ECF No. 39-1, at 6.) Deputy Riley's dash camera, which recorded his drive to the scene of the confrontation, shows the road-closure signs and the detour. (ECF No. 47-7, at 01:31–01:57.) When Riley's car reaches Dean Ridings Lane at the end of the detour, the view to the left shows additional road closure signs indicating the closed portion of Dean Ridings Lane, while the view to the right shows the front of the courthouse and the portion of the Deans Riding Lane where the deputies confronted the Stouts. (*Id.* at 01:55–02:09.) The video evidence also shows at least two non-police cars driving past the deputies and the Stouts on Dean Ridings Lane and leaving the courthouse through the detour. (ECF No. 47-3, at 00:22, 00:40–48; ECF No. 47-4, 00:29–01:05.)

## II. STANDARD OF REVIEW

The Court may award summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A fact is material if it might affect the outcome of the suit under the governing law.' A dispute is 'genuine' if 'a reasonable jury could return a verdict for the non-moving party.'" *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022) (citation omitted) (first quoting *Libertarian*

4

*Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013); and then quoting *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018)).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Thus, when the record contains video footage that is not open to more than one interpretation and contradicts the non-movant's assertions, the Court 'view[s] the facts in the light depicted by the videotape.'" *Hall v. Wash. Metro. Area Transit Auth.*, 33 F. Supp. 3d 630, 632 (D. Md. 2014) (quoting *Scott*, 550 U.S. at 381)); *Witt v. W. Va. State Police*, 633 F.3d 272, 276 (4th Cir. 2011).

### III. DISCUSSION

Stout accuses the defendants of illegal detention, unlawful arrest, and malicious prosecution in violation of the Fourth Amendment and Virginia law.[5] As a matter of law, none of these claims can proceed if the deputies had reasonable suspicion to detain, and probable cause to arrest, Stout. When officers have probable cause to believe a person has committed a crime, they can arrest that person, thereby defeating an unlawful-detention or unlawful-arrest claim.[6]

---

[5] Stout also alleges malicious-prosecution claims under the Fourteenth Amendment. But "[b]ecause the Fourth Amendment provides 'an explicit textual source' for § 1983 malicious prosecution claims, the Fourteenth Amendment provides no alternative basis for those claims." *Evans v. Chalmers*, 703 F.3d 636, 646 n.2 (4th Cir. 2012) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)).

[6] *See English v. Clarke*, 90 F.4th 636, 645–46 (4th Cir. 2024). To the extent Stout alleges a state false-imprisonment claim, he must show his arrest was "unlawful." *Lewis v. Kei*, 281 Va. 715, 722, 708 S.E.2d 884, 889 (2011). When "an officer observes acts that give him reasonable cause to believe a misdemeanor has been committed in his presence, an arrest is lawful." *Yeatts v. Minton*, 211 Va. 402, 406, 177 S.E.2d 646, 649 (1970).

Likewise, both federal and state malicious-prosecution claims require that the plaintiff establish that the defendants seized him without probable cause.[7]

Similarly, Stout's state assault-and-battery claim fails if the deputies used "reasonable force to execute their lawful duties." *Guerrero v. Deane*, 750 F. Supp. 2d 631, 658 (E.D. Va. 2010) (first quoting *Ware v. James City County*, 652 F. Supp. 2d, 693, 712 (E.D. Va. 2009); and then citing *Pike v. Eubank*, 197 Va. 692, 90 S.E.2d 821 (1956)).[8] In other words, if the deputies had probable cause to arrest and used "'objectively reasonable' [force] in light of the facts and circumstances confronting them," Stout cannot hold them liable for assault and battery. *See Graham v. Connor*, 490 U.S. 386, 397 (1989).

Virginia Code Section 46.2-928 prohibits pedestrians from "us[ing] the roadways for travel, except when necessary to do so because of the absence of sidewalks which are reasonably suitable and passable for their use." The term "roadway" includes "that portion of a highway . . . ordinarily used for vehicular travel," and "highway" includes "the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel." *See* Va. Code Ann. § 46.2-100 (defining "roadway" and "highway"). Accordingly, a person

---

[7] *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012) (quoting *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005)); *Lewis*, 281 Va. at 722, 708 S.E.2d at 889.

[8] In his response to the defendants' motion for summary judgment, Stout asserts for the first time that the defendants retaliated against him for exercising his First Amendment rights. (ECF No. 50, at 2.) Stout cannot amend his complaint through a pleading. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013). And even if he had properly brought a First Amendment retaliatory-arrest claim, it would also "fail[] as a matter of law if there was 'probable cause for the arrest.'" *Hulbert v. Pope*, 70 F.4th 726, 738 (4th Cir. 2023) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019)).

walking on a road not "open to the use of the public for purposes of vehicular travel" does not violate the statute. *See id.* Violating Section 46.2-928 qualifies as a Class 4 misdemeanor.[9]

The video evidence confirms that Stout stood and walked on Dean Ridings Lane during his encounter with the defendants.[10] But Stout contends that the road was closed to the public, so the defendants had no probable cause to believe he violated the law. To make this point, he relies on the pictures of road-closure signage included in his complaint. (ECF No. 39-1, at 3–5.) Riley's dash-cam video, however, shows that while part of the road may have been closed, the part of the road Stout walked and stood on was open to public traffic. (ECF No. 47-7, at 01:31–02:09.) The footage corroborates Stout's own map in his amended complaint, which shows a detour for only part of Dean Ridings Lane. (ECF No. 39-1, at 6.) And the various videos capturing the incident show at least two cars driving on Dean Ridings Lane and turning onto the detour before reaching the closed portion of the road. (ECF No. 47-3, at 00:22, 00:40–48; ECF No. 47-4, 00:29–01:05.) Given that the video evidence clearly contradicts Stout's assertion about the extent of the road closure, the Court must adopt the facts in light of the video. *See Witt*, 633 F.3d at 276. Through that lens, the Court concludes the portion of the road where Stout walked was open to public traffic.

Stout argues walking in the road was "necessary . . . because of the absence of sidewalks." ECF No. 48, at 7 (quoting Va. Code Ann. § 46.2-928). But he has failed to explain why he could not instead walk on the large grassy areas lining Dean Ridings Lane, or on any of the nearby sidewalks closer to the courthouse. And even if walking in the road was "necessary," the statute

---

[9] *See* Va. Code Ann. § 46.2-113 ("It is unlawful for any person to violate any of the provisions of this title[] . . . . Unless otherwise stated, these violations shall constitute traffic violations punishable by a fine of not more than that provided for a Class 4 misdemeanor . . . ."); *see also id.* § 46.2-937 ("[T]raffic infractions shall be treated as misdemeanors.").

[10] *See, e.g.*, ECF No. 47-3, at 05:25; ECF No. 47-4, at 00:48, 01:29, 3:13; ECF No. 47-5, at 00:30, 02:35; ECF No. 47-6, at 00:31; ECF No. 47-7, at 02:45.)

requires that pedestrians "keep to the extreme left side or edge" of the road, or on "either shoulder." Va. Code Ann. § 46.2-928. The videos show Stout standing and walking in the middle of the road.[11] Because Stout walked on a roadway open to public traffic, the defendants had both reasonable suspicion to stop him and probable cause to arrest him for violating Virginia Code Section 46.2-928. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). His unlawful-detention, false-arrest, and malicious-prosecution claims thus fail as a matter of law.

Because the deputies had probable cause, Stout's assault-and-battery claim fails if the deputies used objectively reasonable force. *Guerrero*, 750 F. Supp. 2d at 658. Other than objecting generally to his arrest and the circumstances surrounding it, Stout has not explained how the deputies exceeded the bounds of reasonable force. The videos show that when Stout briefly retreated, the deputies followed with their tasers drawn. But they did not use them, and when Stout quickly surrendered, the deputies simply handcuffed him, searched him, and placed him in a police van. Under those undisputed facts, the deputies used objectively reasonable force. The Court will therefore also grant summary judgment in favor of the defendants for the assault-and-battery claim.

## IV. <u>CONCLUSION</u>

To prevail on his unlawful-detention, false-arrest, and malicious-prosecution claims, Stout must establish that the defendants did not have probable cause to arrest him for walking and standing on Dean Ridings Lane. To win on his assault-and-battery claim, he would have to show the officers had no probable cause or that they used unreasonable force against him. Because the video evidence shows that the officers had probable cause and did not use excessive force, the

---

[11] *Supra* n.10.

8

Court will grant the defendants' motion for summary judgment (ECF No. 46), and will deny Stout's motion for summary judgment, (ECF No. 48).

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and the *pro se* plaintiff.

Date: 4 March 2024
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge